UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TERRELL DESHON KEMP, SR., | Case No. 2:18-cv-00169-RFB-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et. al.*, | |
| Defendants. | |

## I.     INTRODUCTION

Before the Court for consideration are Defendants Komascar, Dr. Williamson and Naphcare, Inc.'s Motion for Summary Judgment, ECF No. 84, Defendants Hardy and Schmidt's Motion for Summary Judgment, ECF No. 85, and Defendant Las Vegas Metropolitan Police Department's Motion for Summary Judgment, ECF No. 86.

## II.     PROCEDURAL BACKGROUND

This matter arises from a complaint against Defendants Officer Hugh Hardy, Captain Nita Schmidt, (collectively, "the Officers"), the Las Vegas Metropolitan Police Department ("LVMPD"), Naphcare Inc., Dr. Larry Williamson, M.D., and Ashley Komascar (collectively, "Naphcare Defendants"). The federal complaint alleges seven claims: Claim 1 is a claim pursuant to 42 U.S.C. § 1983 for constitutional violations under the Fourth and Fourteenth Amendments against Defendant Hardy for excessive force used during Plaintiff's booking into CCDC. Claim 2

is a claim for municipal liability against LVMPD for their failure to adequately train, direct, supervise and control their officers. Claim 3 is a claim pursuant to 42 U.S.C. § 1983 for constitutional violations under the Eighth Amendment for deliberate indifference as to all Defendants. Claim 4 is a claim of negligence as to all Defendants. Claim 5 is a claim of negligence per se as to all Defendants. Claim 6 is a claim of negligent supervision and training against LVMPD and Naphcare. Claim 7 is a claim of gross negligence against all Defendants.[1]

On January 29, 2018, Plaintiff filed an application for leave to proceed in forma pauperis. ECF No. 1. He attached his complaint to the application. ECF No. 1-1. On August 22, 2018, that complaint was screened. ECF No. 7. The screening order referred this case to the Pro Bono program of the District. Claims were allowed to go forward against Defendants Hardy, Williamson, Dawson, Kendra, Ashley, Schmidt, LVMPD, and Naphcare only. Counsel was appointed in this case on October 24, 2018. ECF No 17. While there was an apparent difficulty with service, the relevant Defendants were served by the end of 2018. See ECF Nos. 31, 32, 33, 34, and 35.

Naphcare Defendants answered the original complaint on December 28, 2018. ECF No. 36. Officers and LVMPD answered the complaint on December 31, 2018. ECF No. 38. Defendants filed a demand for a jury trial on December 31, 2018. ECF No. 40.

/ / /

---

[1] Pursuant to discussion on the record at the hearing on the motions that are the subject of this Order, Plaintiff has conceded Claims 4, 5, 6, and 7 in their entirety. Transcript of Proceedings on March 24, 2022 at 2-3. Accordingly, the Court will not address or rule upon Claims 4 through 7. What follows is a discussion of Claims 1, 2, and 3. The Court notes, however, that this dismissal is unrelated to the medical expert declaration requirement of Nev. Rev. Stat. § 41A.071. The Court has previously ruled that because the Nevada Supreme Court has found that the requirement under Nev. Rev. Stat. § 41A.071 is a procedural one, federal courts do not have to defer to this requirement in considering state law issues relating to professional negligence. See Banner v. Las Vegas Metro. Police Dep't, 2017 WL 4819102, at *3 (D. Nev. Oct. 24, 2017), see also Zanon v. Beauty By Design, 2021 WL 3134901, at *2–3 (D. Nev. July 23, 2021).

On April 1, 2019, the Court ordered the dismissal of Defendant Kendra pursuant to Fed. R. Civ. P. 4(m). ECF No. 50.

On January 14, 2020, Plaintiff filed a motion for leave to file an amended complaint. ECF No. 66. This motion was granted. ECF No. 74. This is the operative complaint. ECF No. 75.

Defendants answered the amended complaint on April 6 and 9. ECF Nos. 76, 77.

On February 22, 2021, Naphcare Defendants filed a motion for summary judgment. ECF No. 84. On October 19, 2021, Plaintiff filed a response. ECF No. 108. On December 2, 2021, Defendants replied. ECF No. 117.

On February 22, 2021, Defendants Hardy and Schmidt filed a motion for summary judgment. ECF No. 85. On October 26, 2021, Plaintiff filed a response. ECF No. 111. On January 7, 2021, Defendants replied. ECF No. 119.

On February 22, 2021, Defendant LVMPD filed a motion for summary judgment. ECF No. 86. On October 2, 2021, Plaintiff responded. ECF No. 112. Defendants replied on January 7, 2022. ECF No. 118.

On March 24, 2022, oral argument was held on these motions. ECF No. 124. This written order follows.

### III.    FACTUAL BACKGROUND

#### a.  Undisputed Facts

The Court finds the following facts to be undisputed.

##### i.  Initial Arrest

On July 26, 2016, Plaintiff was arrested between 4:30 and 6 PM. When the officers placed him in handcuffs, he asked if he could put on his knee braces, but the officers did not allow him to

do so. The arresting officers brought Plaintiff to Clark County Detention Center ("CCDC").

## ii. Incident with Defendant Hardy

While Plaintiff was being booked at CCDC, he had a physical altercation with Defendant Hardy. Plaintiff was initially assisted onto a bench by Defendant Hardy and another officer. Plaintiff was then asked to remove his clothing. At that time, Plaintiff communicated to Defendant that, months earlier, he had been shot in the head, had a previous spinal injury, and had a bilateral knee injury. When Defendant Hardy told Plaintiff to stand up, Plaintiff said he could not because of his injuries. Plaintiff explained that he needed assistance to stand and asked Defendant for help. When Plaintiff said he could not stand, Defendant Hardy said, "we can do this the hard way or the easy way." After Defendant Hardy told him to stand, Plaintiff estimates it took approximately 45 seconds to a minute before Defendant Hardy forced him to stand. Defendant Hardy stood inches away from Plaintiff's body, putting his left leg inside of Plaintiff's right leg. Plaintiff describes the following regarding the incident:

> [H]e put his hand around my neck, and with the other hand he bend my wrist back and he jerked. I heard a pop in my knee. He jerked me up and tried to stand me up, and my weight was like he couldn't lift me all the way up, and he got tired and he dropped me back down. And at that time I was like unconscious a little bit and I just started crying, and he said ain't shit wrong with you.

ECF No. 85-5 at 119:2-9. The incident took approximately five to seven seconds. During that time, Plaintiff was crying.

## iii. Initial Physical Assessment

Shortly after the incident with Defendant Hardy, Plaintiff received his initial physical assessment as part of the booking process. Plaintiff did not refuse the assessment and noted on the form that he had no new injuries; no trauma to head, face, or neck; and his gait was normal with no limitations for activities for daily living. The nurse wrote in the comments section that Plaintiff "[r]eports he usually walks with a walker prescribed by a doctor at Southwest Medical for

unexplained knee pain, [Plaintiff] is observed ambulating with a slight limp only. Also reports he wears Knee support sleeves, not prescribed." The nurse also noted that he had a gunshot wound to his head and arm from 2015 and that he has chronic back, neck, and knee pain. After the examination, Plaintiff signed his consent that he answered all the questions on the Comprehensive Nurse Exam forms truthfully to the best of his knowledge and ability.

> iv.   July 29, 2016 and August 4, 2016 Grievances

Three days after the initial incident with Defendant Hardy, Plaintiff wrote a grievance stating the following:

> Yes; I am writing in regards of pain that was inflicted upon me by an Officer Hardy at booking at C.C.D.C. while being booked on 7/26/16 approx around 7:00 PM. I (Terrell Deshon Kemp) explained to officer I was shot in the head, and my left arm and I still have a bullet in my left arm. He told me I was lying and that I was bullshitting. Officer Garley also explained to him of my medical condition, so he disregard what I (Terrell Deshon Kemp) and Officer Garley, said. And snatch me by the back of my neck, which I already have nerve damage, and shoulder and right arm, which immediately sharp pains shot up my arm to my neck and back. I will like to be seen by a doctor and have x rays. Also for Officer Hardy. Remedy Sought: to be terminated of job at C.C.D.C.

ECF No. 85-7. An officer at CCDC responded on July 31, 2016, saying "I looked into your concerns and found them to have no merit. You can submit a kite to medical for your concerns." Id. On August 4, 2016, Plaintiff wrote another grievance which stated:

> Yes; I am asking for all copies of your investigation on the incident that took place on 7/26/16 with Officer Hardy in book which in fact, he did assault me (Terrell Deshon Kemp) while sitting down. The cameras will in fact show that I am saying is accurate, and that my complaint is not without merit. Remedy sought: termination of job is at C.C.D.C.

ECF No. 85-8. An officer at CCDC responded: "You request was answered by a Sgt. If you would like you can file a C.R.B. form which can be obtained from your unit officer." Id.

> v.   Citizen Review Board Complaint

On August 14, 2016, Plaintiff submitted a complaint to the Citizen Review Board ("CRB") about the incident. The Internal Affairs Bureau ("IAB") subsequently opened an investigation concerning Plaintiff's complaint on September 13, 2016. Ultimately, the IAB "found no clear and

convincing policy violations by Officer Hardy" and closed the investigation. The CRB agreed with IAB that Hardy did not violate LVMPD's use of force policy.

vi.   <u>Medical Care at CCDC</u>

On July 27, 2016, Plaintiff was seen for an initial physical exam. At that exam, he reported that "he usually walks with a walker prescribed by a doctor at Southwest Medical. For unexplained knee pain, [he] is observed ambulating with a slight limp only. Also reports he wears knee support sleeves, not prescribed." ECF No. 85-6. The report indicated that he was taking "Flexiril, IBU PRN, Gabapentin PRN (doesn't know dose)." <u>Id</u>.

Between booking and August 16, 2016, Plaintiff submitted several medical "kites," including on August 14, 2016 when he requested "x-rays of my shoulders, neck [and] spinal" for "severe chronic pains, which was inflicted by Officer Hardy in booking[.]" He was seen by the nurse the next day. In addition to his complaints about his shoulders, neck, and spine as noted in the kite, Plaintiff reported to the nurse a "messed up" left small finger, eye pain, and "bilateral knee pain left with hardware and right with 'floating patella'"; he requested "knee braces or sleeves" to address his knee pain.

Plaintiff saw Defendant Dr. Williamson on August 16, 2016 for a chronic care visit." Dr. Williamson examined Plaintiff, at which time Plaintiff again requested a knee sleeve for his left knee and x-rays of his neck and shoulder to assess "damage" from the alleged assault by Defendant Officer Hardy. Dr. Williamson ordered x-rays of his cervical spine and left shoulder, which were taken the next day. The radiology report for the left shoulder indicates that, "The examination demonstrates preservation of the acromioclavicular and glenohumeral joints. There is no evidence of fracture or dislocation. No significant bony abnormalities are identified. Impression: no significant abnormality of the shoulder." ECF No. 84-1.

The radiology report for the cervical spine indicates that: "There is normal alignment and curvature. No fractures or subluxations are noted. The vertebral bodies, intervertebral disc spaces, and prevertebral soft tissues are all normal. The atlantoaxial relationship is maintained. The adjacent soft tissues are also normal. Impression: No abnormalities noted in the cervical spine." ECF No. 84-1.

On August 23, 2016, X-rays of Plaintiff's knees were obtained. The radiology report for the left knee reported that: "There are posterior screws and pins in the distal medial femur. There is no acute fracture. No other abnormality is demonstrated. Impression: Old trauma and previous surgery." The radiology report for the right knee reported that: "There is a 2.3 cm in length calcified body in the joint. There are mild osteoarthritic changes in the medial compartment. There is no joint effusion. No other abnormality is demonstrated. Impression: 2.3 cm in length calcified body in the joint. Mild osteoarthritic changes in the medial compartment."

Between August 2016 and September 25, 2018, Naphcare Defendant managed Plaintiff's symptoms with pain medication, including varying doses of ibuprofen, gabapentin, and cyclobenzaprine. It is undisputed that during this time, Plaintiff's primary concern was obtaining knee sleeves or braces to mitigate his knee pain. The Court has confirmed that Plaintiff eventually obtained knee braces.

Between August 2016 and September 25, 2018, Plaintiff saw a Naphcare physician 27 times, including 13 personal visits with Dr. Williamson and 14 visits from Naphcare nurses. Additionally, during this time, he received 17 sets of x-rays and two off-site orthopedic consultations.

vii. Plaintiff's August and December 2017 Medical Grievances

On August 1, 2017, Plaintiff wrote a grievance complaining that he had been "denied and

delayed the appropriate medical care." ECF No. 85-11. Defendant Schmidt responded to his grievance by stating she would address his concerns with the medical staff. On August 16, 2017, Nurse Kendra met with Plaintiff to discuss his medical concerns. In her note on Plaintiff's medical records, she noted that she would schedule a second opinion assessment and that Plaintiff agreed with the plan.

The next day, staff physician Harry Duran met with Plaintiff for a second opinion. Duran assessed Plaintiff for bilateral knee pain and right knee swelling. His treatment plan consisted of obtaining x-rays of Plaintiff's knees, his right hand, and LS Spine; order labs for him; and follow up and determine an appropriate outside referral.

On December 14, 2017, Plaintiff wrote another grievance to Schmidt complaining that his basic medical needs had not been met. Lt. Zavsva responded to Plaintiff's grievance by informing Plaintiff that he "forwarded [his] concerns to Dr. Duran and have him reviewing your chart." ECF No. 85-15. The day after Zavsza responded to Kemp's grievance, Dr. Duran met Plaintiff in response to his musculoskeletal complaints and ordered labs and X-rays.

### b.  Disputed Facts

Plaintiff alleges that there is a genuine dispute of material fact as to: (1) whether Naphcare Defendants were deliberately indifferent to his medical needs by denying his request for a transfer to a hospital for medical attention, in examining his injuries, and in ordering X-rays for the wrong body parts, (2) whether LVMPD Defendants were deliberately indifferent to his serious medical needs, (3) whether Plaintiff has exhausted any administrative remedies that may have applied to Plaintiff, and (4) whether Defendants are entitled to qualified immunity.

/ / /

/ / /

1

## IV.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.  Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage.  Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.    DISCUSSION

The Court now turns to analysis of the instant motions for summary judgment. As discussed above, Plaintiff has conceded Claims, 4, 5, 6, and 7. The Court will therefore not address those claims. Plaintiff's remaining claims are brought pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right

secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff alleges that Defendant Hardy violated his Fourth and Fourteenth Amendment rights by applying excessive force during his booking into CCDC. Plaintiff alleges that LVMPD is liable for their failure to adequately train, direct, supervise and control their officers. Finally, Plaintiff alleges that Defendants Hardy, Schmidt, and Naphcare Defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs.

### a.  Claim 1: Fourth Amendment Violation by Defendant Hardy

Plaintiff alleges that Defendant Hardy violated his constitutional rights by unlawfully applying excessive force during his booking into CCDC. Defendant Hardy argues that Plaintiff's claims are barred by administrative exhaustion or that, in the alternative, he is entitled to qualified immunity.

The Fourth Amendment to the U.S. Constitution provides that "the right of the people to be secure in their persons…against unreasonable searches and seizures, shall not be violated…" U.S. Const. amend. IV. The Fourth Amendment's right to freedom from unreasonable search and seizure is applied to the states through the Due Process Clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961). A claim of excessive force brought pursuant to 42 U.S.C. § 1983 is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). The reasonableness of force "must be judged from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. The inquiry in an excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. See also Davis v. City of Las Vegas, 478 F.3d 1048

(9th Cir. 2007). In determining whether a particular use of force was unreasonable and thus in violation of the Fourth Amendment, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's countervailing interests. Id.

In evaluating the governmental interest, the Court generally considers factors including (a) the severity of the suspect's alleged crime or conduct; (b) whether the suspect posed an immediate threat to the officers' safety; and (c) whether the suspect was actively resisting arrest or attempting to escape. Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 947 (9th Cir. 2017). Other factors relevant to the reasonableness of the force used include "the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." Id. citing Glenn v. Washington Cty., 673 F.3d 864, 872 (9th Cir. 2011). Of all the considerations, the most important is whether the suspect posed an immediate threat to the safety of the officers or others. Id. (citing Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). The factors are not exclusive, and the Court must consider the totality of the circumstances.

Finally, summary judgment in excessive force cases should be granted sparingly, because "[w]hether a particular use of force was reasonable is rarely determinable as a matter of law." Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014) (citing Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994)).

The Court finds there to be a genuine dispute of material fact as to the "reasonableness" of the exertion of force. The key question here is whether the nature of Defendant Hardy's action is reasonable in light of the government's interest in controlling Plaintiff's conduct during booking. As a man who needed assistance in walking into the area where incoming inmates were booked,

it is unclear what threat, if any, Plaintiff posed to the officers in the room. Based on the disputed facts, plaintiff was not resisting or actively attempting to escape. He alleges his was passive when he was forcefully grabbed by Hardy.  Moreover, Hardy was told about his physical limitations and would have understood that using such force would likely cause Plaintiff pain and was unnecessary. And, Hardy could have sought the assistance of other officers in more gently assisting Plaintiff but chose not to use a less forceful means of getting Plaintiff to his feet. Based upon the disputed facts, the Court finds that there are genuine issues of disputed fact as to whether the force used by Hardy was reasonable under the circumstances.

i.    Administrative Exhaustion

Defendant argues that, because Plaintiff failed to exhaust his grievances against Defendant Hardy, his claim is barred.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate "must use all steps the prison holds out, enabling the prison to reach the merits of the issue." Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Proper exhaustion requires the inmate to comply with administrative regulations and procedures. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). If a defendant demonstrates that a prisoner-plaintiff fails to exhaust available remedies, the plaintiff may rebut that with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).

/ / /

- 12 -

The Court finds that at the time Plaintiff was incarcerated at CCDC, the facility had a three-step grievance process for these concerns: (1) the inmate can seek an informal resolution with a Corrections Officer or a Floor Sergeant, (2) if the inmate cannot resolve his request/grievance through informal contact with staff, he can file a formal grievance for an administrative remedy. The inmate will write an Inmate Request/Grievance Form and submit to the receiving officer. (3) If this step does not resolve the grievance, the inmate writes a grievance to the Deputy Chief. This is the point at which LVMPD will consider a grievance to have been exhausted. Inmates may also make a complaint to the Citizen Review Board, but this is an advisory panel outside of the grievance appeal process.

The Court recognizes that it is undisputed that Plaintiff did not complete the grievance process as outlined above. He completed the first and second steps of the above process several times and then was told that he could file a CRB complaint. Plaintiff went through the full CRB process. The IAB also investigated the incident.

As this Court has previously noted, "the intent of the exhaustion requirement is to place the facility on notice of issues raised by an inmate and not erect esoteric and irrelevant procedural requirements." Williams v. Allen, No. 2:17-cv-01612-RFB-DJA, 2020 U.S. Dist. LEXIS 94684, *21 (D. Nev. May 29, 2020); see also Griffin, 557 F.3d at 1120 ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."). Here, the Court finds that the facility was put on notice by Plaintiff's filing of two separate grievances, as well as his CRB complaint and the IAB investigation. Plaintiff represents to the Court that he attempted to grieve the issue but was met with resistance and difficulty. Defendants argue that after receiving a denial of his claim at the CRB, he should have continued to pursue his prior grievance pursuant to the appeals process outlined in the Inmate Handbook. The Court finds that it is abundantly clear that Plaintiff had clearly alerted CCDC staff to his concerns by filing his multiple grievances and by bringing his claim before the CRB. The Court

- 13 -

further finds that, in the context of an excessive force claim in this case, Plaintiff reasonably believed that no administrative remedy would be forthcoming after the denial of his CRB claim. The Court also notes that is unclear what further purpose would have been served by having Plaintiff file another appeal when it was obvious that no relief would be forthcoming. Plaintiff is not required to engage in exhaustion procedures whose primary purpose is to create an impediment to litigation rather than alert an agency to an issue or problem to be resolve. The Court accordingly finds that Plaintiff's claim is not barred for failure to exhaust, as it is clear that the facility was on notice as to the specific facts and nature of his complaint.

### ii.   Qualified Immunity

Officials, such as police officers, are entitled to qualified immunity from § 1983 claims unless they violated a right protected under the U.S. Constitution that was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014). While a case directly on point is not required in order for a right to be

clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011). Further, the right must be defined at "the appropriate level of generality ... [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al–Kidd, 563 U.S. at 742. "The plaintiff bears the burden of proving that the right allegedly violated was clearly established." Tarabochia, 766 F. 3d at 1125 (citation omitted).

In deciding a claim of qualified immunity where a genuine dispute of material fact exists, the court accepts the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010).

Accepting the version of facts asserted by the Plaintiff, it is clear that a constitutional violation occurred. According to Plaintiff, Defendant Hardy was on notice of his incapacitating injuries and inability to walk. Plaintiff was attempting to obey the order to remove his clothing when Defendant Hardy instructed him to stand up and moved close enough to prevent him from doing so. According to this account, Defendant's own conduct prevented Plaintiff from obeying Defendant Hardy's order. Further, Plaintiff's allegations are both that Defendant Hardy grabbed him by his neck and bent his right wrist back, injuring him and causing him to almost become unconscious. ECF No. 111 at 2-3. Plaintiff was passive and not resisting at the point at which Hardy used such force on Plaintiff. There is no apparent reason why asserting enough force upon Plaintiff's hand/wrist so as to injure his hand/wrist would be necessary in the context of assisting Plaintiff with removing his clothing. Further, the safety and security of others in the room was plainly not at issue in light of the circumstances, so the permissible force was correspondingly low. Certainly, on the basis of Plaintiff's account, the force exerted did not balance out with the interest in obtaining compliance with Defendant's order.

/ / /

Defendant Hardy argues that he is entitled to qualified immunity from liability in his individual capacity from Plaintiff's claim of excessive force because there is "no existing precedent which squarely governs the specific facts in this case." ECF No. 85 at 26. The Court finds that this states the right far too narrowly. While the right is not to be defined at a "high level of generality," the qualified immunity analysis does not "require a case directly on point." Nicholson v. City of L.A., 935 F.3d 685, 690 (9th Cir. 2019). In defining the right, the "focus is on whether the officer had fair notice that her conduct was unlawful . . . for example, through any cases of controlling authority in their jurisdiction at the time of the incident." Id. (internal quotation marks and citations omitted). The Court finds that the proper inquiry in defining the constitutional right is whether, by 2018, there existed controlling authority in the Ninth Circuit establishing that the use of excessive force in order to get an inmate to obey a non-urgent order could violate an individual's Fourth Amendment rights.

The Court finds that ample authority existed to make this right "clearly established." As early as 2002, the Ninth Circuit stated in Gibson v. City of Washoe, Nevada that, "[a]lthough the Supreme Court has not expressly decided whether the Fourth Amendment's prohibition on unreasonable searches and seizures continues to protect individuals during pretrial detention, we have determined that the Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention." 290 F.3d 1175, 1197 (9th Cir. 2002), overruled on other grounds by Castro v. City of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (citations omitted). "The Supreme Court's analysis in Graham v. Connor therefore explicates the standards applicable to a pretrial detention excessive force claim in this circuit." Id. See also Kingsley v. Hendrickson, 576 U.S. 389, 397–98 (2015). In Kingsley, the Supreme Court found that the Supreme Court held that a pretrial detainee states a claim for excessive force under the Fourteenth Amendment if: (1) the defendant used the force purposely or knowingly, and (2) the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. See Id. at 2472-73. "Considerations such as the following may bear on the reasonableness or

unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 2473. Accordingly, it is "clearly established" that a pretrial detainee has a right to be free of excessive force. Further, the Ninth Circuit has stated that the "law is clearly established that a reasonable correctional officer cannot administer strong blows upon a compliant pretrial detainee without violating the detainee's right under Fourteenth Amendment's Due Process Clause to be free from objectively unreasonable force purposely used against him." Fletcher v. Marquardt, 753 Fed. Appx. 449, 450 (9th Cir. 2019) (citing Felix v. McCarthy, 939 F.2d 699, 701 (9th Cir. 1991)).

Further, the facts as alleged could not support a reasonable belief that the conduct in question conformed to the established law. It is a violation of clearly established law for an officer to violently grab an unresisting and compliant detainee by the neck and forcefully jerk that person to his feet when it is known that this person suffers from incapacitating injuries or medical conditions, when this person poses no threat and when there are other less forceful means of completing the booking process.

Accordingly, Plaintiff's Fourth Amendment claim against Defendant Hardy pursuant to 42 U.S.C. § 1983 will proceed to trial. Summary judgment is denied.

### b.  Claim 2: Municipality Liability of LVMPD

Local governments can be held liable under Section 1983 for deprivations of federal rights only if the violation is caused by action taken pursuant to official municipal policy or custom; municipalities may not be held liable under a theory of *respondeat superior*. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978). A local government may be held liable in four scenarios: 1) if "execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury." Id. at 694 (1978); 2) if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it," Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1097 (9th Cir. 2013); 3) if a municipality's failure to train employees amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989); Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006).; and 4) "custom or informal" policy. Gillete v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992) "When an individual sues a local government for violation of a constitutional right, the municipality is liable if the individual can establish that the local government 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." Galen v. County of L.A., 477 F.3d 652, 667 (9th Cir.2007) (quoting Monell, 436 U.S. at 694–95). To allege municipal liability under Monell, a plaintiff must provide more than a bare allegation that a policy exists. AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).

Summary judgment is properly granted to Defendants on this claim. While there is a genuine dispute as to the material fact of whether a constitutional violation has occurred with regard to Defendant Hardy's conduct, Plaintiff asserts no more than conclusory and speculative allegations as to the existence of "a deliberate policy, custom, or practice that was the moving force behind the constitutional violation." Galen, 477 F.3d 652. Defendants have demonstrated that they have standard operating procedures that act as policies both as to use of force and as to medical services. See ECF No. 85-2. In order for the municipality with established policies to be held liable for constitutional violations, Plaintiff is required to show either that the policy itself facially violates federal law or that the municipality through inaction has failed to adequately

implement the policy. See <u>Hyun Ju Park v. City & Cty. of Honolulu</u>, 952 F.3d 1136, 1141 (9th Cir. 2020). Plaintiffs have failed to do so. Plaintiffs assert that the municipality is liable because "Officer Hardy was not disciplined for indifference despite his obvious non-compliance with training protocols. His supervisor, Officer Schmidt was also not disciplined." However, Plaintiff is unable to point to objective facts or evidence that show that any policy of action of LVMPD's was the moving force behind the alleged constitutional violation. At the summary judgment stage, it is no longer appropriate to rest on bare factual allegations in the complaint. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.") (internal citations omitted).

Further, although a plaintiff may state a claim for <u>Monell</u> liability where an "official with final policy-making authority ratified a subordinate's unconstitutional decision and the basis for it," <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992), to hold a municipality liable under the ratification theory, the plaintiff must show the individual in question was a final policymaker. <u>Id</u>. at 1347. Plaintiff has not established that Hardy's alleged behavior was reviewed and ratified by an official at LVMPD who was a final decisionmaker. Accordingly, LVMPD is not liable under a ratification theory.

Accordingly, the Court grants summary in favor of the Defendants on Claim 2.

### c. Claim 3: Eight Amendment Violation by all Defendants

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"

Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). In order to establish this violation, two requirements must be met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Id. at 834; see also Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

In order to establish the subjective prong of the Eighth Amendment test, a prison official must have a "sufficiently culpable state of mind." Id. To satisfy the subjective prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "Indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). A mere difference of medical opinion cannot support a claim of deliberate medical indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Instead, a plaintiff must show "that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to [the prisoner's] health." Id. (internal quotation marks and citations omitted) (alteration in original). When a Plaintiff alleges that the delay of medical treatment evinces deliberate indifference, the Plaintiff must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). A defendant is liable under § 1983

/ / /

"only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### i.  Naphcare Defendants

#### 1.  Naphcare, Inc.

Plaintiff's third claim for deliberate indifference is pled against all Defendants. Naphcare, Inc. is one of the remaining Defendants in this case. However, as a private entity acting under color of state law, Naphcare, Inc. is subject to the requirements of Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) (holding that "we see no basis in the reasoning underlying Monell to distinguish between municipalities and private entities acting under color of state law"). To make out a claim against a private entity under Monell, a plaintiff must show that (1) the private entity acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of the private entity. Id. Plaintiff has both failed to pled allegations that establish a basis for this claim and has failed to name NaphCare, Inc. as among the entities with alleged liability. As a result, summary judgment is granted in favor of NaphCare, Inc. NaphCare, Inc., is accordingly dismissed from the case.

#### 2.  Ashley Komascar

Ashley Komascar is Naphcare's Director of Nursing. In his response to Naphcare's Motion for Summary Judgment, Plaintiff contends that "Director of Nursing Ashley Komascar did fail to treat my serious medical need. . . . .Komascar knew of my medical condition, denial of knee-braces, and referrals to an Orthopedic Specialist, and failed to act after being told repeatedly month after month, for over 1 ½ years. Komascar failed to correct the inadequate medical care provided by Dr. Williamson and their staff, from which I suffered physical, mental, and emotional pains,

due to failure to treat my medical condition." ECF No. 108 at 2-3. However, Plaintiff does not make any specific factual allegations regarding Defendant Komascar's knowledge or conduct in his Amended Complaint. Further, Plaintiff indicates no facts or evidence that could lead to the conclusion or inference that Nurse Komascar had knowledge of or was in any way involved in denial of his medical care. Because a defendant is only liable under § 1983 "only upon a showing of personal participation by the defendant," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), summary judgment is granted in favor of Defendant Komascar. Accordingly, she is dismissed from this action.

### 3. Dr. Williamson

The key undisputed facts regarding Dr. Williamson's participation in Plaintiff's medical care are the following: Plaintiff saw Dr. Williamson on August 16, 2016 for a chronic care visit. Dr. Williamson examined Plaintiff, at which time Plaintiff requested a knee sleeve for his left knee and x-rays of his neck and shoulder to assess "damage" from the alleged assault by Defendant Officer Hardy. Dr. Williamson ordered X-rays of his cervical spine and left shoulder, which were taken the next day on August 17 and August 23. The X-rays indicated that Plaintiff showed evidence of old trauma, surgical hardware, mild osteoarthritis, and a "calcified body" in the right joint in Plaintiff's knee. No acute fracture or other abnormality was present. Plaintiff exhibited signs of chronic, pain-inducing conditions. It is undisputed that Dr. Williamson treated Plaintiff using pain medication. It is also undisputed that Dr. Williamson refused to provide Plaintiff with knee braces or sleeves.

In order to establish deliberate indifference, a Plaintiff must show more than a mere "difference of medical opinion as to the need to pursue one course of treatment over another." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Rather, to prevail on a claim involving

choices between alternative course of treatment, a Plaintiff "must show that the chosen course of treatment was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to. . . .health." Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). It is beyond dispute that Dr. Williamson treated Plaintiff for his chronic knee pain using pain medication. While it is clear that Plaintiff wanted knee braces to mitigate his pain instead of just medication and was refused, this is not enough to establish an Eighth Amendment violation. Plaintiff must point to some objective evidence that indicates that it was medically unacceptable to deny him knee braces or that the use of such braces was the only course of treatment that could mitigate his pain. He does not do that here. Plaintiff's claim is thus, at best, a claim for medical negligence which is not sufficient to establish a medical indifference claim under Section 1983. Id.

Accordingly, summary judgment is properly granted in favor of Dr. Williamson on this claim. He is dismissed from this action.

ii.   Defendant Schmidt

Here, the undisputed facts demonstrate that Defendant Schmidt did not act out of "deliberate indifference" to a serious medical need or with a "sufficiently culpable state of mind." Plaintiff alleges that, despite his numerous medical request forms, "Captain Schmidt did not address all of my medication issues with medical staff until sixteen months of my being incarcerated at CCDC and after I submitted multiple grievances and complaints from August 2016 to August 2017." ECF No. 111 at 3. He also alleges that Defendant Schmidt knew the issues he was having with the medical staff for a year. Id.

The undisputed facts are the following: Defendant Schmidt was responsible for addressing a single one of Plaintiff's grievances on August 1, 2017. See ECF No. 85-11. This grievance

requests the following medical actions: a physical exam, surgery on his knee, pain medication for back pain, and medical records from a health provider. Captain Schmidt responded on August 21, 2017, saying "I will address your concerns medical." ECF No. 85-11. Plaintiff was apparently seen by medical (Nurse Kendra) after his August 1, 2017 grievance. See ECF No. 85-13. Additionally, Plaintiff states "Captain Schmidt did address my complaint, but she did not resolve my inadequate medical treatment by Dr. Williamson and medical staff." ECF No. 111 at 4. There is no other evidence in the record that implicates Defendant Schmidt.

Accordingly, the undisputed facts in the record indicate that Defendant Schmidt was responsible only for responding to a single informal grievance. Defendant Schmidt did respond to Plaintiff's grievance and help him to obtain medical attention. Plaintiff has put forth no evidence that Schmidt had the authority to do more than what she did or that she was otherwise directly involved in the denial of treatment to Plaintiff. The undisputed facts therefore do not support subjective culpability for an Eighth Amendment "deliberate indifference" violation. The undisputed facts show that there was no "purposeful. . . . failure to respond to a prisoner's pain or possible medical need." Jett, 439 F.3d at 1096.

Further, Plaintiff has not submitted evidence or identified facts in the record showing the existence of a genuine issue of material fact regarding Defendant Schmidt's alleged Eighth Amendment violation.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Plaintiff, instead, relies on the allegations that lack any specific factual support, which is not sufficient to raise a genuine dispute at this stage in the case. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material

facts. . . . In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.") (internal citations omitted).

### iii.   Defendant Hardy

While it appears on the face of the Complaint that Plaintiff's Third Claim is brought against all Defendants, Officer Hardy's involvement in this case extends only to his use of force at intake, not to deliberate indifference of a serious medical need. Defendant Hardy was not involved in denying or ignoring Plaintiff's medical requests. Because a defendant is liable under § 1983 "only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), Defendant Hardy is not liable for a claim of deliberate indifference.

Summary judgment is therefore properly granted in favor of each of the Defendants on Plaintiff's Claim 3.

## VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that Claims 4, 5, 6, and 7 are DISMISSED. Plaintiff conceded these claims at the oral argument on these motions. ECF No. 124.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 84) is GRANTED in full consistent with this order. The NaphCare Defendants, including NaphCare Inc., Larry Williamson, M.D., and Ashley Komascar, are hereby dismissed from this case.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 85) is GRANTED in part and DENIED in part consistent with this order. Summary judgment is DENIED as to Claim 1 against Defendant Hardy. Summary judgment is GRANTED as to Claim 2 against Defendant Hardy and all claims against Defendant Schmidt. Defendant Schmidt is hereby dismissed from this case.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 86) is GRANTED in full consistent with this order. LVMPD is hereby dismissed from this case.

**IT IS FURTHER ORDERED** that remaining Parties shall file a joint proposed pretrial order including potential trial dates for the October 2022, due 30 days from the date of the order.

**DATE**: <u>March 31, 2022</u>.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**